UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Mahnomen County, Minnesota,

    Plaintiff,

v.

The Bureau of Indian Affairs,
Dirk Kempthorne in his official
capacity as the Secretary of the
Interior, and the United States,

    Defendants.

MEMORANDUM OPINION
AND ORDER
Civil No. 08-5180 (MJD/RLE)

_____

Scott G. Knudson and Daniel J. Supalla, Briggs and Morgan, P.A. for and on behalf of Plaintiff.

Amy S. Tryon, Trial Attorney, U.S. Dept. of Justice, Ronald J. Tenpas, Assistant Attorney General and Marcia M. Kimball, Department of the Interior, Office of the Solicitor for and on behalf of Defendants.

_____

This matter is before the Court on Defendants' (collectively "the United States") motion to dismiss or in the alternative for summary judgment.

**BACKGROUND**

The White Earth Band of Chippewa Indians (hereinafter the "Band") purchased certain parcels of land in 1991 upon which the Band operates gaming

1

operations at the Shooting Star Casino (hereinafter referred to as the "Casino Property" or "Tract 1"). Id. It is the Band's position that the Casino Property was purchased through funds made available in the White Earth Lands Settlement Act ("WELSA"), Pub. L. 100-153, Act of Nov. 5, 1987, 101 Stat. 886 (1986).

WELSA was enacted to address uncertainties as to title to certain allotted Indian lands within the White Earth Indian Reservation and as recompense to the Band for consequences that arose due to the uncertainties to land titles. WELSA §§ 2 and 6(a). In addition to settling unresolved legal issues raised by the Band, the United States and the State of Minnesota, WELSA provided for the establishment of "The White Earth Economic Development and Tribal Government Fund." WELSA § 12(b). WELSA further provides that any lands within the exterior boundaries of the reservation acquired through this fund "shall be held in trust by the United States." WELSA § 18. Section 18 further provided that lands so acquired by the Band "shall be deemed to have been reserved from the date of the establishment of said reservation and to be part of the trust land of the White Earth Band for all purposes."

In 1995, the Band applied to the federal government to put the Casino Property into trust. (AR001173.) The application was approved by the Assistant

Secretary for Indian Affairs, subject to the Band satisfying all title requirements in accordance with 25 C.F.R. § 151.12, and that the Band obtain approval of all financing and land-related documents if such approval is required by 25 U.S.C. § 81 and/or 25 C.F.R. Part 162.  (AR0001390.)  Due to outstanding title objections, the Casino Property was not taken into trust at that time.  (AR001274, 001053.)

In 2000, the Band inquired of the Bureau of Indian Affairs ("BIA") as to the effect of Section 18 of WELSA, and whether it had the effect of removing land purchased pursuant to that section from the requirements of 25 C.F.R. § 151. (AR001368.)  In response, the BIA concurred in the opinion that "lands acquired pursuant to Section 18 of WELSA should follow the mandated acquisition requirement in 25 C.F.R. § 151."  (AR001369.)  In July 2002, the Band formally requested the BIA to take the Casino Property into trust as a mandatory acquisition under Section 18 of WELSA.  (AR001251-52, 001086.)  In support of its request, the Band submitted documents to demonstrate that the Casino Property, or Tract I, had been purchased with WELSA funds.  (See AR000936, 000959-61, Affidavit of Frank Johnson, CFO for the Band, and audit reports.)

Initially, the BIA determined these documents were insufficient from which to determine whether the Casino Property was purchased with WELSA

funds, and requested additional information from the Band, such as bank statements and other financial documents. (AR000894, 000730.) The Band did submit additional documents, but informed the BIA that many of the documents requested had been destroyed in a flood, including bank statements and cancelled checks. (AR000739-779, deeds, purchase agreements, the Band's investment plan.) A senior financial analyst at the Office of Indian Gaming Management ("OIGM") reviewed the documents the Band did submit, and concluded that such documents established by a preponderance of the evidence that WELSA funds had been used to purchase the Casino Property. (AR000255-57.)

On March 23, 2006, the BIA Midwest Regional Director issued a Notice of Decision to take the Casino Property into trust as a mandatory acquisition pursuant to Section 18 of WELSA. (AR000239-242.) The Notice, however, described two tracts of land, Tract 1 and Tract 2. The United States asserts that inclusion of the reference to Tract 2 was error.

The State of Minnesota properly appealed the BIA's decision to the Interior Board of Indian Affairs ("IBIA"). (AR000058-59.) The County, however, did not file a timely appeal. By Order dated July 3, 2008, the IBIA affirmed the decision

of the BIA.  State of Minnesota v. Acting Midwest Regional Director, 47 IBIA 122, 127 (2008) (AR00003-10.)  The IBIA specifically found that the record supported the Regional Director's decision, which included the OIGM analysis of the financial documents, together with supporting documents.  Id.  After the IBIA issued its decision, the BIA published notice of its intent to acquire the land in trust in the Mahnomen Pioneer. (Ex. 2.)

**STANDARDS OF REVIEW**

**A.  Motion to Dismiss**

When considering a motion to dismiss under Rule 12(b)(6), the Court "accept[s] as true all of the factual allegations contained in the complaint, and review[s] the complaint to determine whether its allegations show that the pleader is entitled to relief."  Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008) (citing Bell Atlantic Co. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007)).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Twombly 127 S. Ct. at 1964-65 (citations omitted). "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Id. at 1973.

### B. Summary Judgment

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact. Celotex, 477 U.S. at 323. This burden can be met "by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Id. at 325. The party opposing summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir.1995).

### C. Review of Administrative Decisions

A final federal agency decision is reviewed pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2). Under the APA, an agency decision

can be reversed where the agency action was arbitrary or capricious, an abuse of discretion or otherwise not in accordance with the law. § 706(2)(A). "To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Overton Park, 401 U.S. at 416. Agency decisions are given a "high degree of deference." Sierra Club v. EPA, 252 F.3d 943, 947 (8th Cir. 2001). "The court is not empowered to substitute its judgment for that of the agency." Overton Park, at 416.

Review is typically based solely on the administrative record. "In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error." 5 U.S.C. § 706.

> If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. The reviewing court is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry.

Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985).

## D. Conversion of Motion to Dismiss to Summary Judgment

A motion to dismiss may be converted to a motion for summary judgment where matters outside of the pleadings are considered by the Court. Fed. R. Civ. P. 12(d). When the Court is reviewing agency action, as it is in this case, the Court "sits as an appellate tribunal, not as a court authorized to determine in a trial-type proceeding whether the Secretary's study was factually flawed." Marshall County Health Care Auth. v. Shalala, 988 F.2d 1221, 1225 (8th Cir. 1993). "The entire case on review is a question of law, and only a question of law. And because a court can fully resolve any purely legal question on a motion to dismiss, there is no inherent barrier to reaching the merits at the 12(b)(6) stage." Id. at 1226.

The County nonetheless asks that the Court convert this motion to one of summary judgment, and asks the Court to consider matters outside of the administrative record. It is the County's position that the decision of the IBIA is erroneous, and as support, the County has submitted an opinion from a forensic accountant. The County also seeks additional discovery to support its claim that the IBIA's decision is erroneous. As noted above, however, a party that is challenging an agency action ordinarily is not entitled to augment the agency

record.  Id.; see also, Am. Bioscience, Inc. v. Thompson, 269 F.3d 1077, 1084 (D.C. Cir. 2001) ("Absent very unusual circumstances the district court does not take testimony.") (citing Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971).  In Overton Park, for example, the Court determined that when the administrative record is bare, the district court may require further explanation from the Secretary in order to review the Secretary's decision.  401 U.S. at 420.  Here, however, the administrative record is substantial.

**ANALYSIS**

    **A.  Was the BIA Decision Arbitrary and Capricious or Contrary to Law?**

The United States asks the Court to dismiss this action pursuant to Rule 12(b)(6) as the County's challenges to the BIA's decision fail as a matter of law.

As an initial matter, the Secretary's Notice of Decision, as noted above, includes references to Tract 1 and Tract 2.  The United States concedes that reference to Tract 2 in the Notice of Decision was a mistake, and that the BIA is not treating Tract 2 as a mandatory acquisition.  The Band does have an application pending to have Tract 2 taken into trust as a discretionary acquisition.  The Secretary is complying with all regulatory requirements and has not yet rendered a decision on that application.

With respect to Tract 1, or the Casino Property, the County argues there were insufficient facts before the BIA to support a finding that WELSA funds were exclusively used to purchase the Casino Property. The United States responds that there was sufficient evidence, and that the County's desire for a different outcome does not render the BIA's decision arbitrary or capricious.

The administrative record includes an affidavit from the Band's CFO, Frank Johnson, with accompanying documents, in which Mr. Johnson states that in his capacity as "accountant for the special project involved in the development of the Shooting Star Casino, he was aware of and did the accounting for the monies that were used for the expansion of the casino, which included the monies obtained the White Earth Reservation Land Settlement Act." (AR000959, ¶ 4.) He further states that he reviewed the Band's investment plan on the use of the interest generated from the deposit of the WELSA funds, and that such plan called for interest earnings to be split three ways, one of which was dedicated to land acquisition. (Id. ¶ 6.) Based on his review of the balance sheets and audit reports for fiscal year end September 30, 1991, and Statements of Revenue, Mr. Johnson determined that WELSA funds were used to purchase the parcels of land from Winifred Blaser, S & T Motors and Claude Stevens, which lands make up the

10

Casino Property.  (Id. ¶ 7-13.)

After an initial review, the BIA requested additional documents from the Band, many of which the Band was able to forward to the BIA, such as deeds, purchase agreements and the Band's investment plan.  (AR000744-47, 000749-50, 000752.)  Some of the documents requested, however, a third purchase agreement and the cancelled checks, were destroyed by a flood.  (AR000740.)

All of the documents submitted by the Band were then given to a senior financial analyst with the OIGM.  Based on that review, the analyst concluded "Even absent canceled checks, records make it clear that the White Earth Band purchased the parcels with tribal funds, and no other source of funds for the purchase, nor any nonpayment, has been asserted."  (AR000343.)  He further noted that $319,170.57 constituted fiscal earning on the WELSA funds, and that "the preponderance of evidence shows that the White Earth Band used [WELSA] funds, and/or earnings on the funds, for the purchase of [Tract 1]."  (Id.)  Despite the County's protestations, the United States argues the analyst's conclusion was reasonable.

The County asserts that the documents allegedly reviewed by the OIGM analyst were presented to a forensic accountant, Phil Williams, who opined that

11

such documents did not establish that the Casino Property was purchased exclusively with WELSA funds and that the BIA's decision was flawed in several fundamental respects.  (Larson Aff., Ex. 10.)  The County further argues that the OIGM analyst was directed to conclude that WELSA funds were used to purchase the Casino Property.  Finally, the County argues that the BIA's error in including Tract 2 in the Notice of Decision, when the administrative record makes no mention of Tract 2, shows bad faith on the part of the agency.

To be entitled to discovery or to rely on matters outside of the administrative record, the County must make a strong showing that the BIA acted with bad faith or improper behavior.  Maxey v. Kadrovach, 890 F.2d 73, 77 (8th Cir. 1989); see also Voyageurs Nat. Park Ass'n v. Norton, 381 F.3d 759, 766 (8th Cir. 2004) (exceptions which allow discovery in actions challenging agency review must not be casually invoked).  The Court finds, however, that the County has not made such a showing.  Accordingly, matters outside the administrative record should not be considered.

In an action similar to this, the Tenth Circuit Court of Appeals remanded a matter to the Secretary of the Interior based on the court's finding that the documents reviewed by the Secretary did not substantially support the Secretary's

determination that certain lands were purchased with specific funds that would require a mandatory trust placement.  Sac & Fox Nation of Missouri v. Norton, 240 F.3d 1250, 1263-64 (10th Cir. 2001.)  In fact, the documents on their face suggested that nearly half of the funds used to acquire the land at issue were not from the requisite fund.  Id. at 1263.

In this case, the Midwest Regional Director for the BIA, Larry Morrin, was aware of the Sac & Fox Nation case, and because of that case, was concerned as to whether the Band had submitted sufficient documents to support a finding that the Casino Property had been purchased with WELSA funds.  (AR000737.)  As a consequence, he sent the documents to the OIGM analyst for his professional determination.  (Id.)

The Court further finds that the administrative record does not support the County's contention that the OIGM analyst was directed to conclude that WELSA funds were used to purchase the Casino Property.  Mr. Morrin asked the OIGM analyst to review the Band's documents and determine whether such documents are sufficient to demonstrate that WELSA funds were used to purchase the Casino Property.  "If you determine the financial data is sufficient we ask you to proceed with the publication of the Federal Register notice. . . . If you determine the

evidence is insufficient we ask that you provide advice on the recommended next step in the process or alternatives for the Tribe." (AR000737.)  Such concern on the part of Mr. Morrin certainly does not support a finding of bad faith or improper behavior on the part of the BIA.

Finally, the Court finds that the inclusion of Tract 2 in the Notice of Decision does not support a finding of bad faith.  The administrative record makes no mention of Tract 2.  In addition, the administrative record as a whole demonstrates the recognition by the BIA that its decision must be supported by documentary evidence.  Thus, the inclusion of Tract 2 in the Notice of Decision can reasonably be viewed as nothing more than a typographical error.

The County argues that the Sac & Fox Nation decision is on point to this case.  As in Sac & Fox Nation, the documents before the BIA, on their face, do not support a finding that WELSA funds exclusively were used to purchase the property.  Thus, the County believes remand to the Secretary is appropriate for a more thorough determination as to the source of funds used to purchase the Casino Property.

The Court finds, however, that the Secretary's decision to take the Casino Property into trust is reasonable and supported by ample evidence.  After

14

reviewing all relevant documents submitted by the Band, the OIGM analyst concluded that a preponderance of the evidence supported a finding that WELSA funds were exclusively used to purchase the Casino Property, and that there was a lack of evidence that other funds were used to purchase the Casino Property. When reviewing agency actions, the question is not whether the Court would have come to the same conclusion, but whether the agency conclusion is supported by a rational basis.  Voyageurs Nat'l Park, 381 F.3d at 763; Ctr. for Auto Safety v. Dole, 828 F.2d 799, 804-05 (D.C. Cir. 1987) (holding that "[t]he APA does not permit a reviewing court to decide which side of the factual dispute it thinks "the preponderance of the evidence" in the administrative record falls on").

Based on the above, the Court finds that the Secretary's decision was neither arbitrary and capricious nor contrary to law.

**B.     Application of 25 C.F.R. § 151.10 Procedures for Discretionary Acquisition**.

The County further argues that unless there is evidence that WELSA funds were exclusively used to purchase the Casino Property, the regulations set forth in 25 C.F.R. § 151.10 should have been followed, to have given the County notice and an opportunity to be heard before the acquisition was approved.

The United States responds, however, that these regulations apply to discretionary acquisitions, not to mandatory acquisitions. In particular, 25 C.F.R. § 151.10 clearly states that the section applies only were the acquisition is not mandated. See also Confederated Salish & Kootenai Tribes v. United States ex. rel. Norton, 343 F.3d 1193, 1194-95 (9th Cir. 2003) (stating the Section 151.10 requires the Secretary to provide notice to state and local governments before approving discretionary land acquisitions). In a Memorandum Opinion in a related case, issued contemporaneously with this Memorandum Opinion, this Court has determined that Section 18 of WELSA clearly and unequivocally creates a mandatory trust acquisition where land acquired by the Band is located within the White Earth Band Reservation and was acquired with WELSA funds. (See White Earth Band et al. v. County of Mahnomen et al., Civ. No. 07-3962.) See also Churchill County v. United States, 199 F. Supp.2d 1031, 1033-34 (D. Nev. 2001) (finding that "shall" is a mandatory term, indicating lack of discretion on the part of the Secretary); Nevada v. United States, 221 F. Supp.2d 1241, 1246-47 (D. Nev. 2002) (same); Sault Ste Marie Tribe of Lake Superior Chippewa Indians v. United States, 78 F. Supp.2d 699, 702-03 (W.D. Mich. 1999) rev'd on other grounds 288 F.3d 910 (6th Cir. 2002) (same).

The County responds that the court's opinion in Sac & Fox Nation, 240 F.3d 1250, creates a condition precedent to a mandatory trust application - specifically that a tribe must demonstrate that statutorily allocated funds were the exclusive source of funds for the land acquisition.  The United States does not appear to disagree that evidence had to be presented to demonstrate that the Casino Property was purchased exclusively with WELSA funds.  But, as discussed above, sufficient evidence had been presented to establish such fact, therefore the mandatory procedures were properly followed.

**CONCLUSION**

Because the Court finds that the Secretary's decision is reasonable and supported by a rational basis, the County's Complaint requesting that the Court set aside the Secretary's decision must be dismissed.

IT IS HEREBY ORDERED that the Motion of the United States to Dismiss or in the Alternative for Summary Judgment [Doc. No. 7] is GRANTED. This case is hereby dismissed with prejudice. The County's Motion for Discovery [Doc. No. 20] is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Date: March 24, 2009

                                          s/ Michael J. Davis
                                          Michael J. Davis
                                          Chief Judge
                                          United States District Court

Civil No. 08-5180